**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

IN RE:

KENNETH DALE BLAKE
and CLAUDIA JEAN BLAKE,

                      Debtors.

KENNETH DALE BLAKE
and CLAUDIA JEAN BLAKE,

                      Plaintiffs,

v.                                            CIVIL ACTION NO.   5:14-mc-00148

VANDERBILT MORTGAGE AND
FINANCE, INC.,

                      Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion of Vanderbilt Mortgage and Finance, Inc. to Withdraw Reference* (Document 1) and *Memorandum of Law in Support* (Document 2), the *Plaintiffs' Response in Opposition to Defendant's Motion to Withdraw the Reference* (Document 3), as well as the *Defendant's Reply to "Plaintiffs' Response in Opposition to Defendant's Motion to Withdraw the Reference"* (Document 5). The Court has also reviewed the parties' attached exhibits. After careful consideration, and for the reasons stated more fully herein, the Court finds that the Defendant's motion should be granted.

I.        FACTUAL AND PROCEDURAL HISTORY

The Debtors/Plaintiffs, Kenny and Claudia Blake, are a married couple residing with their two sons in Rupert, West Virginia. They are unsophisticated in financial matters.[1] In or around April 2012, the Blakes sought a mobile home to place on land which they owned, and visited the sales lot of CMH Homes, Inc., an affiliate of Vanderbilt Mortgage and Finance, Inc. (Vanderbilt), in Beaver, West Virginia. They did not find an acceptable home during that visit, but afterwards, did call "CMH and accepted its offer to sell them the home pictured in the [CMH] catalogue." (Document 3 at 3.)

The Blakes allege that they were instructed to meet in a room in Beckley, West Virginia, to sign papers related to credit terms for the mobile home purchase. They assert that no attorney attended the meeting, and that they were "simply instructed to sign here, sign here, with no meaningful explanation of the documents and terms." (*Id.*) (internal quotation and citation omitted). The terms dictated that the Plaintiffs were giving both their (1) land and (2) subject mobile home as a security interest, and furthermore stated that the loan was for a twenty (20) year term with an interest rate of 10.17 percent. (*Id.*) The Plaintiffs also allege that "[t]he documents conflict with one another, including disclosing of different amounts for attorney, settlement, and title services." (*Id.* at 3-4.)

When it came time for delivery, however, the home actually delivered was different "from the home CMH had represented to Plaintiffs that it would provide," and was only worth approximately $58,776.04, as opposed to $70,000, the value for the home listed in the catalogue.

---

1    Kenny Blake did not finish high school, and works as a coal miner, while Claudia Blake is a homemaker. (*See* Document 3 at 2-3.)

2

(Document 3 at 4.) Allegedly, the mobile home has further decreased in value since that time. (*Id.*)

The Plaintiffs claim that the Defendant has engaged in abusive debt collection practices and employed faulty accounting since the beginning of activity on the Plaintiffs' account. (*Id.*) For example, the Plaintiffs maintain that the Defendant incorrectly calculated their monthly escrow payments and, thus, charged them incorrect amounts, as well as failed to pay their personal property taxes on the home as agreed. (*Id.*) The Plaintiffs argue that the Defendant "has further collected and threatened to collect illegal default fees and attorney fees from Plaintiffs, including by letters dated December 5, 2013, and December 6, 2013." (*Id.*)

The Plaintiffs filed their *Chapter 13 Voluntary [Bankruptcy] Petition* on January 8, 2014. (*See* Case No. 5:14-bk-50003, Document 1.) On February 21, 2014, Defendant Vanderbilt filed an *Objection of Vanderbilt Mortgage and Finance, Inc. to Confirmation of Chapter 13 Plan* (Case No. 5:14-bk-50003, Document 24). On July 9, 2014, the Plaintiffs filed a *Proof of Claim Objection and Adversary Proceeding to Determine Validity of Lien* (Document 46). The Plaintiffs' complaint in the adversary proceeding contains the following five counts: Count One - unconscionable inducement; Count Two - fraud as a defense to contract; Count Three - set off for illegal debt collection; Count Four - set off for illegal fees and charges; and Count Five - illegal/unconscionable arbitration clause. (Document 46 at 6-12.)

They argue that the Defendants violated several sections of the West Virginia Consumer Credit Protection Act (WVCCPA), principally W. Va. Code §§ 46A-2-115, 46A-2-121, 46A-2-125, 46A-2-127, and 46A-2-128. They also assert a common law fraud claim. The Plaintiffs seek to have the loan declared unenforceable, as well as to "setoff" any award of

3

damages to the amount claimed due under the loan, attorney's fees and cost of the litigation, and a declaration that the arbitration clause is void and unenforceable.

On August 28, 2014, the Defendant filed the *Motion to Withdraw Reference* with its *Memorandum in Support*. The Plaintiffs filed their *Response in Opposition* on September 5, 2014, and Vanderbilt filed its *Reply* on September 22, 2014. Seeking to bring additional case law to the Court's attention, the Plaintiffs also filed a *Notice of Supplemental Authority* (Document 6) on October 24, 2014, and Vanderbilt filed the *Defendant's Response to, and Motion to Strike, Plaintiffs' "Notice of Supplemental Authority"* (Document 7) on November 11, 2014. The Court finds that the supplemental authority was available to the Plaintiffs for citation in their brief well before the due date for the response in opposition, and further, there has been no showing of good cause as to why the Plaintiffs did not include it with their original submission.

## II.   APPLICABLE LAW

"Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011)(citing 28 U.S.C. § 157(a)). The Southern District of West Virginia's local rules declare that "all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition." L.R. Civ. P. 83.13 (citing 28 U.S.C. § 157(a)). The Court may, however, withdraw a reference "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Six relevant factors courts examine when assessing whether to withdraw a reference for cause include:

> (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial.

*In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E. D. Va. 2003). While not dispositive, "the first factor – whether the matter is core or non-core – generally is afforded more weight than the others." *In re O'Brien*, 414 B.R. 92, 98 (S. D. W. Va. 2009) (Johnston, J.). The Court also notes that "[s]imply because the proceeding presents questions of state law does not necessarily mean that the proceeding is non-core or otherwise beyond the jurisdiction of the bankruptcy courts." *Blackshire v. Litton Loan Servicing, L.P.*, 2009 WL 426130 *2 (S. D.W. Va. 2009) (Goodwin, C. J.) (not reported). Instead, to distinguish a core proceeding from a non-core one, courts should evaluate whether:

> (1) the claims are specifically identified as core proceedings under 28 U.S.C. § 157(b)(2).; (2) the claims existed prior to the filing of the bankruptcy case; (3) the claims are based entirely on state law or otherwise existed independently from title 11; and (4) the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings.

*Id.*

### III. DISCUSSION

Vanderbilt first argues that withdrawal of the reference is mandatory because "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," and notes that resolution of Count V of the complaint will implicate the Arbitration Act found at 9 U.S.C. § 1, *et. seq.* (Document 2 at 1) (internal quotation omitted). Vanderbilt's memorandum focuses on the factors courts use in determining whether to withdraw the reference, and argues that withdrawal is appropriate here because all of the claims contained in the Blake's complaint arise under state law

5

and not under Title 11, or bankruptcy law, and are thus non-core.[2] (*Id.* at 2-4.) It argues that the Plaintiffs' attempt, to "setoff" any amounts received as a result of the alleged WVCCPA violations, does not otherwise bring those claims in the realm of bankruptcy law. (*Id.* at 4) ("The Blakes' claim that what they supposedly will recover on these [WVCCPA] claims will be involved in the administration of their bankruptcy estate is saying nothing more than if this sum of money becomes available to them, it will become an asset which can be administered in their bankruptcy case.")

Vanderbilt notes that withdrawing the reference would promote the uniform administration of bankruptcy law because "no bankruptcy law is implicated in determining whether [Vanderbilt] is liable for any of the wrongs alleged." (Document 2 at 6.) Vanderbilt argues that promotion of judicial economy and efficient use of the parties' resources are intertwined with the "preservation of the right to a trial by jury." Vanderbilt points out that it has not consented to a trial by jury yet, and is further weighing its options with respect to compelling arbitration. (*Id.* at 6-7.) It notes that this Court will have to review, *de novo*, any proposed findings of fact and conclusions of law from the bankruptcy court surrounding the non-core proceedings, and this would result in a duplication of judicial resources. (*Id.* at 7) (internal quotation and citation omitted.)

Vanderbilt finally argues that forum shopping would be encouraged if the Court did not withdraw the reference because the Plaintiffs have unmistakably "tried to clothe their clearly non-core claims with core proceeding rhetoric to support the illusion that their claims are core

---

2 Vanderbilt notes that any determination of "[w]hether the arbitration clause is enforceable will turn on application of the Arbitration Act," or federal law. (Document 2 at 5, n.1.)

proceeding claims," and denial of the motion to withdraw will only promote forum shopping. (*Id.* at 7.)

The Blakes oppose withdrawal of the reference to bankruptcy court under any theory, and argue that Vanderbilt has failed to carry its burden of showing that withdrawal of the reference is mandatory. They note that deciding the instant matters "does not require substantial and material interpretation of a non-bankruptcy statute, and as a result, withdrawal of the reference is not mandatory." (Document 3 at 5.) They also note that the Defendant has failed to establish cause for otherwise withdrawing the reference. They characterize their complaint in the adversarial proceeding as simply an "objection to and for the purpose of substantially reducing Vanderbilt's claim against the estate, making them core bankruptcy claims," and nothing more than "counterclaims by the estate against a person[] filing claims against the estate." (*Id.* at 7-8) (citing 28 U.S.C. § 157(b)(2)(c)).

The Plaintiffs argue that the claims clearly impact the administration of the estate, and "until it is resolved, the adversary complaint delays confirmation of Plaintiff's Chapter 13 plan . . . .." (*Id.* at 8-9.) They also aver that their claims are constitutionally core under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), because they will "be entirely resolved through the claim allowance process," and will otherwise impact each of the other creditors to the estate. (*Id.* at 10-11.) The Plaintiffs allege that Vanderbilt's consent to a jury trial is unnecessary because the claims are constitutionally core, and "by filing a proof of claim, Vanderbilt consented to adjudication of the claim (and the objections and counterclaims thereto) in the bankruptcy court." (*Id.* at 12.)

Vanderbilt replies that the Plaintiffs have raised more than generally applicable contract defenses to Count V. It argues that the Plaintiffs seek to preclude arbitration entirely as an

7

alternative dispute resolution. Vanderbilt argues that the Plaintiffs have thus placed "at issue the federal substantive law of arbitrability…" and that "the FAA preempts state laws that attack arbitration itself as opposed to a transaction-specific issue in the parties' contract." (Document 5 at 2) (reference omitted). Put simply, the Plaintiffs "raise substantial and material interpretation of a federal statute, namely, the FAA. Accordingly, mandatory withdrawal applies." (*Id.* at 3.) Vanderbilt argues that the Plaintiffs have implicated non-bankruptcy law when they tout the effect that the United States Constitution, as well as federal rules of civil and appellate procedure, has on this case, further demonstrating that mandatory withdrawal is appropriate. (*Id.* at 4.)

Vanderbilt further argues in support of discretionary withdrawal, or withdrawal of the reference for cause shown, and notes that the claims are non-core because they do not arise in or under the Plaintiffs' bankruptcy case or Bankruptcy Code. (*Id.* at 5.) It argues that the Plaintiffs misconstrue 28 U.S.C. § 157(b)(2), and also mischaracterize *Stern*. (*Id.* at 6-7.) Vanderbilt wholeheartedly opposes any contention that the presence of potential "setoffs" renders the Plaintiffs' adversary proceeding claims constitutionally core. (*Id.* at 8.) It notes that the debt in this instance is secured, and, therefore, there is no way that it can be "declared unenforceable as a matter of law." (*Id.* at 9.) Vanderbilt asserts that the bankruptcy court does not have constitutional authority to render a final decision on Counts I, III, IV and V of the complaint because this Court will have to review the Bankruptcy Court's proposed findings of fact and conclusions of law due to the fact that Vanderbilt is not waiving its right to request a jury trial nor does it consent to trial in the Bankruptcy Court. (*Id.* at 11-13.) All of this, it argues, will create unneeded judicial duplication and waste the parties' resources. (*Id.* at 14-15.)

8

After reviewing all of the parties' arguments and the applicable case law, the Court finds that the reference to the Bankruptcy Court should be withdrawn for cause shown. The Court considers the claims contained in the adversary proceeding to be non-core. They arose independently of the bankruptcy matter, they are premised entirely on state common and statutory law (Counts I, II, III, and IV), and they implicate the Federal Arbitration Act (Count V). Indeed, they could have been originally brought in an action outside of the bankruptcy context. "Each of the plaintiffs' [five] counts in the [complaint] could have been filed if the debtors never filed for bankruptcy. None of the claims arose under Title 11 or arose in a Title 11 case. The [complaint] therefore, presents a non-core proceeding, which weighs heavily in favor of withdrawal." *Allen v. National City Mortg.*, 2006 WL 3899997 at * 2 (S.D.W. Va. 2006) (Goodwin, J.) (not reported). Further, both parties concede that their rights would be significantly affected by the outcome of the bankruptcy proceeding, including the outcome of the adversary proceeding filed in relation to Vanderbilt's proof of claim as to the mobile home and/or land used as a security interest for said home.

Having considered the claims contained in the Plaintiffs' adversarial complaint to be non-core, the Court next analyzes the propriety of withdrawing the reference. No questions are presented regarding the uniform administration of bankruptcy law. That any amount received *may* or *could* be offset against Vanderbilt's proof of claim does not obviate discretionary withdrawal, and does not otherwise bring the state and federal law claims within the context of bankruptcy, as the Plaintiffs suggest. "The bankruptcy code defines setoff as the 'right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under [title 11] against a claim of such creditor against the debtor that

9

arose before the commencement of the case.'" *In re O'Brien*, 414 B.R. at 101 (citing 11 U.S.C. § 553(a)).

Here, in contrast, the purported setoffs—and the Plaintiffs' right to them—did not arise "before the commencement of the case." The factual and procedural history of this case indicates that these setoffs are not yet concrete but are merely claims at this point. Furthermore, and fatal to the Plaintiffs' contention, "[s]etoffs are subject to the automatic stay, 11 U.S.C. § 362(a)(7), and, therefore, are valid only if they occur prior to the petition or subsequent to relief from the stay." *In re O'Brien*, 414 B.R. at 102. The record in the underlying bankruptcy reveals that the Debtors/Plaintiffs have already filed their Petition. (*See* Case No. 5:14-bk-50003, Document 1.)

The fact that the case may ultimately return to bankruptcy court after the claims are resolved in this Court is not enough to avoid withdrawal of the reference. See *Stern*, 131 S. Ct. at 2619. Additionally, the Defendant has not acquiesced or otherwise waived its right to a jury trial nor consented to trial in the bankruptcy court. Because a bankruptcy court lacks authority to enter a final judgment on non-core claims, this Court would have to review *de novo* "those matters to which any party has timely and specifically objected." 28 U.S.C. 157(c)(1). Thus, judicial economy, conservation of the parties resources, and preservation of the right to a jury trial weigh in favor of withdrawing the reference. Lastly, the Court finds no indication of forum shopping on behalf of either party. Contrary to the Plaintiffs' suggestions, the Defendant's exercise of its right to engage in motion practice before this Court does not constitute forum shopping.

In summation, the claims contained in the adversary proceeding are non-core and do not implicate the uniform administration of bankruptcy law. Withdrawal of the reference would

promote judicial economy, be an efficient use of the parties' resources, and preserve the Defendant's right to a jury trial.

## CONCLUSION

Wherefore, after careful consideration and for the reasons stated herein, the Court **ORDERS** that the *Motion of Vanderbilt Mortgage and Finance, Inc. to Withdraw Reference* (Document 1) be **GRANTED**, and that the reference of Adversary Proceeding No. 5:14-ap-5015 in the Kenneth Dale Blake and Claudia Jean Blake Chapter 13 action, U.S. Bankruptcy Court Case No. 5:14-bk-50003, be **WITHDRAWN**.

The Court further **ORDERS** that the *Defendant's Response to, and Motion to Strike, Plaintiffs' "Notice of Supplemental Authority"* (Document 7) be **GRANTED**, and that the Plaintiffs' *Notice of Supplemental Authority* (Document 6) be **STRICKEN** from the record.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to The Honorable Ronald Pearson, United States Bankruptcy Judge for the Southern District of West Virginia, to counsel of record, and to any unrepresented party.

ENTER: December 16, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA